# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONALD J. BERNARD** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 2-16-CV-1314 |
| | * | |
| **THE SCOTT LITIGATION GROUP** | * | SECTION: "E"  MAG. "1" |
| | * | |
| | * | JURY TRIAL REQUESTED |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants have filed for Summary Judgment to dismiss all remaining claims.

### I – Summary

Class action plaintiffs' lawyers who lose a case do not get paid. When plaintiffs do win, lawyers who did nothing receive no fees. Lawyers who give up their license cannot earn legal fees. Debtors in bankruptcy who fail to timely disclose potential claims forfeit those claims.

Bernard's opposition ignores these simple realities, and seeks to mask the clear undisputed facts:

- The CPLC, including Donald Bernard, lost *Diane Castano, et al. v. The American Tobacco Company, et al.* (the "Castano Action") its national class action in 1996, didn't get paid and the case was dismissed. This was the only case in which Bernard could argue that he did anything. He then vanished for 20 years. (R. Doc. 65-2, pp. 4-6.)

- Bernard signed a contract which required certain actions on his part in order to participate in the Castano Action. He signed no agreement to participate in Scott, a separate state class action. (R. Doc. 65-2, pp. 3-4.)

- Bernard admits he did no work on the Scott case during its sixteen years of litigation, yet he still seeks to bootstrap his way to unearned fees. (R. Doc. 65-2, p. 7.)

- Bernard gave up his law license from July 1, 2002 to July 2014. The Scott case was active from May 1996 to December 2012. Bernard was unlicensed during most of the Scott case. (R. Doc. 65-2, p.13.)

- Bernard admits he did not disclose his potential claim for fees to the Bankruptcy Trustee when he filed in 2005 and only sought to correct this after learning that his deception was uncovered in these proceedings. Judicial estoppel prevents him from asserting these claims. (R. Doc. 65-2, p. 13.)

- Detrimental reliance does not apply when the promise relied on has been honored; i.e., Bernard dismissed his suit and, as promised, became one of the attorneys prosecuting a "national" class action. (R. Doc. 65-2, pp. 3-4.)

## II  - **Bernard Misstates Facts.**

Bernard's "Summary of Opposition" contains various incorrect statements, including the following:

(1) "Also Donald Bernard would become a member of the CPLC and share in any attorneys fees." (R.Doc. 69, p.2.) <u>FACT</u>: The agreement between Messrs. Gauthier and Bernard specifically provided that Bernard would share only in attorney fees earned in the Castano Action. (R. Doc. 65-8.)

(2) "Eventually, the CPLC dismissed the Castano Litigation in Federal Court and refiled it in State Court as the Scott litigation." (R. Doc. 69, p. 1.) <u>FACT</u> – The Castano Action was filed by sixty law firms located throughout the United States. The Fifth Circuit decertified and dismissed it, and, as Bernard testified:

> A  . . . people were kind of like discouraged about the decertification. (R. Doc. 65-5, Bernard Depo., p. 51, ll. 5-6).

Following the decertification, approximately twenty percent of the CPLC members, including Bernard, elected not to participate in the proposed state class actions against the Tobacco Industry, including Scott, to-wit:

  1 - Peter J. Butler, Sr., Duetsch, Kerrigan & Stiles, New Orleans, LA
  2 - Perry R. Staub, Monroe & Lemann, New Orleans, LA
  3 - Melvin M. Belli, Law Offices of Melvin M. Belli, San Francisco, CA
  4 - Walter Umphrey, Provost & Umphrey Law Firm, LLP, Beaumont, TX
  5 - John Eddie Williams, Jr., Williams, Bailey & Wesner, Houston, TX
  6 - Elizabeth Cabraser, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA
  7 - Ronald L. Motley and Joe Rice, Ness Motley, Loadholt, et al., Charleston, SC
  8 - Donald J. Bernard, New Orleans, LA
  9 - John W. "Don" Barrett, Barrett Law Firm, Lexington, MS
  10 - Richard Daynard, Northeastern Univ. School of Law, Boston, MA
  11 - LeRoy Hersh, Hersh & Hersh, San Francisco, CA
  12 - Wayne Hogan, Brown, Terrell, Hogan, et al., Jacksonville, FL
  13 - Sybil Shainwald, Law Offices of Sybil Shainwald, New York, NY
  yet 14 - Russell Smouse, Peter Angelos Firm, Towson, MD

Although each of these parties was initially listed on the Scott petition, each choose not to participate and no one except Bernard has asserted any claim for fees. (R. Doc. 66-3, ¶ 39.)

(3)  "Thereafter, the Scott Litigation Group discontinued communication with Donald Bernard." (R. Doc. 69, p.1.) FACT – Bernard knew about the Louisiana state court litigation, was offered the opportunity to participate therein (R. Doc. 65-2, p.5), and took no action to do so.

> A  you know, as I said, it was just a discussion about them, you know, undertaking to do that, that they were going to then go on and file the Gloria Scott case. And, yes, you know, so I operated under the assumption that it had, in fact, you know, been filed. R. Doc. 65-5, Bernard Depo., p. 90, ll. 12-17.

(4)  "Although he (Bernard) had been included as Counsel of record in the Scott Litigation in State Court, he was not aware of the progress of that litigation after May 23, 1996." FACT – Bernard was very aware of the State Court litigation from its inception as noted in Comment (3) above, and continued to be aware of it for years thereafter:

> Q   And what effort, if any, did you undertake to consult with either your client Ms. Scott or anybody in the Castano PLC for the next 16 years?
>
> A   Oh, I had conversation with Ms. Scott. Ms. Scott was the one who said that, "Now, before this is over with – this thing won't be – I'll be dead – dead and gone before this is over with." That was the comment that kind of like she made. And we laughed about it, you know.
>
> Q   And when was that?
>
> A   That would have been like around 1997 or so, 1997, '98.
>
> Q   Okay.
>
> A   And that's just general. Because I know I had already moved to Las Vegas. We had a conversation after that. (R. Doc. 65-5, Bernard Depo., p. 88, ll. 21-25, p. 89, ll. 1-11.)

### III – **Bernard's Statement of the Applicable Law is Incorrect**.

Bernard continues to rely on the 1943 decision in *McCann v. Todd*, 14 So.2d 469 (1943), despite its rejection by the Fifth Circuit in *P & E Boat Rentals, Inc. v. Martzell,* 928 F.2d 662 (5 Cir. 1991), and the holding in *Brown v. Seimers*, 726 So.2d 1018 (La. App. 5 Cir. 1999), that even though attorneys' representation of a client may start as a joint venture, it ceases as such, when one of the attorneys stops prosecuting the case. Bernard concedes he did nothing to prosecute the Louisiana Class Action, and, could not have once he surrendered his license to practice law. (R. Doc. 65-3, ¶¶ 41, 44.)

The very premises of Bernard's disingenuous argument that "absent agreement to the contrary joint venture attorneys are entitled to share equally in compensation (R. Doc., 69, p. 10) makes no sense here because: (a) there was a written agreement in Scott which Bernard never signed (R. Doc. 65-3, ¶ 46); and, (b) accepting Bernard's argument that every class action lawyer who signs onto a complaint is to be paid the same amount of money regardless of his effort is both contrary to the law of Louisiana (R. Doc. 65-2, pp. 14-15) and would disincentivize anyone from

ever filing a class action because the lawyers who simply signed on would be paid the same as those who carried the laboring oar.

Bernard all but ignores the fact that he was unlicensed throughout most of Scott and instead argues that the holding in *Brown* is distinguishable because he (Bernard) voluntarily surrendered his license to practice law, while the attorney in *Brown* had various complaints against him pending before the bar association. (R. Doc. 69, p. 16.) This argument is flawed, at the least. One cannot practice law in the State of Louisiana and participate in legal fees unless one is a member in good standing of the Louisiana Bar Association. (Rule 5.5(a) Louisiana Rules of Professional Conduct) From July 2002 until July 2014, Bernard was not a member in good standing of the Louisiana Bar Association. (R. Doc. 65-11) Bernard also argues that he is entitled to a fee in Scott because he had his license when Scott started. The problem there is that he never was part of Scott as set forth in Section V hereinafter.

**IV – <u>Bernard's Attempt to Avoid Judicial Estoppel Would Make a Mockery Thereof</u>**.

Bernard attempts to avoid the application of judicial estoppel by offering as facts:

A. "On May 23, 1996, Bernard understood that the Castano litigation had come to an unsuccessful conclusion with the dismissal of the Castano suit."

B. "After May 1996, his next communication with anyone involved with the tobacco litigation was in 2015 when he was contacted by Mr. Piper."

C. ". . . not having any information that the Scott Litigation was ongoing since 1996, . . . ." (R. Doc. No. 69, pp. 18-19.)

However, before learning of the defendant's intent to invoke the doctrine of judicial estoppel Bernard testified directly to the contrary:

> A you know, as I said, it was just a discussion about them, you know, undertaking to do that, that they were going to then go on and file the Gloria Scott case. And, yes, you know, so I operated under the assumption that it

> had, in fact, you know, been filed. (R. Doc. 65-5, Bernard Depo., p. 90, ll. 12-17.)
>
> Q  And what effort, if any, did you undertake to consult with either your client Ms. Scott or anybody in the Castano PLC for the next 16 years?
>
> A  Oh, I had conversation with Ms. Scott. Ms. Scott was the one who said that, "Now, before this is over with – this thing won't be – I'll be dead – dead and gone before this is over with." That was the comment that kind of like she made. And we laughed about it, you know.
>
> Q  And when was that?
>
> A  That would have been like around 1997 or so, 1997, '98.
>
> Q  Okay.
>
> A  And that's just general. Because I know I had already moved to Las Vegas. We had a conversation after that. (R, Doc. 65-5, Bernard Depo., p. 88, ll. 19-25, p. 89, ll. 1-11.)

Bernard's application filed on June 21, 2017 to reopen his bankruptcy proceeding states:

> In full disclosure, the Louisiana federal court in Bernard's case against Scott Litigation Group ordered a mediation on Monday, June 19, 2017. Bernard attended the mediation, but there was no resolution. Defense counsel advised they will seek a dispositive ruling in the federal district court on his litigation claim due to his prior bankruptcy. (R. Doc. No. 66-2, p. 18.)

As the United States Court of Appeal for the Fifth Circuit summarized:

> Accordingly, the Hudspeaths cannot be permitted, at this late date to re-open the bankruptcy proceeding and amend their petition. Judicial estoppel was designed to prevent such abuses. *See Burns v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11 Cir. 2002) **("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.")** (Emphasis Added). *Id.* at 336. *In Re Superior Crewboats, Inc.*, 374 F.3d 330 (5 Cir. 2004, 335).

### V – Bernard's Description of his Agreement with Wendell Gauthier, et al. is Misleading and Inaccurate.

Bernard entered into an agreement with Wendell Gauthier et al. to participate in a specific national class action against the Tobacco Industry; i.e. the Castano Action. (R. Doc. 65-8.) That

agreement required Bernard to execute a promissory note in the amount of $100,000 payable to the Castano PLC account, but payable only out of any recovery from the Castano Action, which he did. The Castano Action was filed on March 29, 1994 and, after being litigated for some two years, an adverse decision was rendered on May 23, 1996 dismissing it. (R. Doc. 65-2, p. 4.)

Once that action was dismissed there was no further agreement between Bernard and Wendell Gauthier, et al. and Bernard's promissory note was void being payable only out of any recovery in the Castano Action. However, all members of the CPLC, including Bernard, were offered the opportunity to participate in some twenty-seven separate state class actions against the Tobacco Industry. (See R. Docs. 65-4, ¶¶17-18, 65-9 and 65-10.)

Bernard knew about the filing of the Louisiana State Class action, and chose not to participate.

> A    you know, as I said, it was just a discussion about them, you know, undertaking to do that, that they were going to then go on and file the Gloria Scott case. And, yes, you know, so I operated under the assumption that it had, in fact, you know, been filed. (R. Doc. 65-5, Bernard Depo., p. 90, ll. 12-17.)
>
> Q    And you made no attempt in the next 18 or so years to check on the status of the case, to consult with your client, to check the public record, or – or do anything to educate yourself about what was going on in the case or to see if you could help out in any way; correct?
>
> A    Nor did I receive anything from them, from the Castano, asking me to do anything. (R. Doc. 65-5, Bernard Depo., p. 90, ll. 22-25; p. 91, ll.1-4.)

Bernard's arguments throughout his opposition memo that the CPLC and the Scott Litigation Group failed to contact him is premised on the absurd idea that a lawyer has zero obligation to pay attention to a pending case. Bernard is no mere uneducated citizen, he has a law degree from Tulane and subsequently earned additional advanced degrees. (R. Doc. 65-5, Bernard Depo., p. 85, line 9, p. 16, ll. 23-24).

Bernard's contention that participation as an attorney in the Castano national class action automatically entitled him to participation in the state class actions without agreeing to certain obligations specific to those cases is specious. He was well aware that his "price of admission" into the Castano Action included the "putting up" of a $100,000 promissory note payable to the "Castano PLC account," which was voided when the Castano Action was dismissed. He had to know that each attorney participating in the state class actions would be obligated at the least to "put up" a similar promissory note for costs to be incurred in those actions payable only out of any recoveries therein. (The cost of prosecuting Scott was over $5 million for the first six years and over $14 million in total.) (R. Doc. 65-2, pp. 6, 8.)

## VI – Gloria Scott

Throughout twenty-nine pages of his argument, there is not one sentence in which Bernard can point to any work he did after 1994. But Scott was not filed until 1996 and lasted through 2012. (R. Doc. 65-2, p. 8.) Yet, Bernard contends he is entitled to credit "for the addition of Gloria Scott . . . to the Scott Litigation." (R. Doc. 69, p. 28.) However, the record is clear that (i) after the Castano Action was filed, Bernard admitted that he was "one of many" attorneys representing her (R. Doc. 65-2, p. 12), and (ii) after Scott was filed, Bernard never appeared on her behalf or was considered by Mrs. Scott to be her lawyer. (R. Doc. 65-2, p. 13.)

More importantly, the Scott lawyers were not paid attorneys' fees based on any contractual agreement with Gloria Scott, or the remaining class representative when the judgment became final and fees were awarded, but, rather, based upon La. C.C.P. art. 595 (court may award "reasonable expenses of litigation, including attorneys' fees", in class action where fund is created).

## VII – Response to Bernard's Allegations of Disputed Facts

1) "Whether Donald J. Bernard's June 1, 1994 agreement (doc 25.2), . . . entitled him to a share of the fee ultimately recovered by the Scott Litigation Group". <u>Answer</u>: This is a written document which must be interpreted within the unambiguous four corners of the writing. (La. C.C. art. 2046.) There is no mention of the Scott Litigation in the document, and indeed there could not have been since it did not exist in 1994.

2) "Whether or not the members of the CPLC (including Bernard) became members of the Scott Litigation Group, thus entitling them to a share of the fee". <u>Answer</u>: Immaterial since Bernard admits he did no work in the *Scott case*. (R. Doc. 65-2, p. 6).

3) "The value that the addition of Gloria Scott . . . to the Scott Litigation and the Scott Litigation Group". <u>Answer</u>: Legal fees were not paid in the Scott Action on the basis of the value of Gloria Scott. See Section VI above.

4) "Whether or not Donald J. Bernard's lack of knowledge of the progress of the Scott Litigation precludes judicial estoppel of his claims herein". <u>Answer</u>: He had knowledge. See Section IV above.

5) "Whether or not Donald J. Bernard is entitled to a share of the attorney's fees obtained in the Scot Litigation resulting from his detrimental reliance on the June 1, 1994 agreement wherein he dismissed his Federal Court lawsuit (*Bernard et al . . .* ) proceeding no. 94-1498". <u>Answer</u>: This is not a factual issue, it is a question of law for the Court to decide based on the undisputed facts.

6) "Whether the June 1, 1994 agreement between Donald J. Bernard and the CPLC constituted a joint venture within the meaning of *Duer and Taylor v. Blanchard, et al.*, and as such, entitles Donald J. Bernard to an equal share of all legal fees obtained pursuant to the joint venture". <u>Answer</u>: This is not a factual issue, it is a question of law for the Court to decide based on the

undisputed facts and the holdings of the United States Fifth Circuit Court of Appeals. See Section III above.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Summary Judgment dismissing all remaining claims.

Respectfully submitted,

/s/  Robert L. Redfearn
Robert L. Redfearn (11418)
Simon, Peragine, Smith & Redfearn, LLP
1100 Poydras Street, 30th Floor
New Orleans, LA  70163-3000
Telephone: (504) 569-2030
Facsimile: (504) 569-2999
Email: robertr@spsr-law.com

Maury A. Herman (6815)
Stephen J. Herman (23129)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA  70113

Counsel for The Scott Litigation Group

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the court's electronic filing system.

New Orleans, Louisiana, this 7th   day of August, 2017.

/s/  Robert L. Redfearn